| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS |

| William Langley, | § | |
| Plaintiff, | § | |
| versus | § | Civil Action H-13-3595 |
| Howard Hughes Management Co., LLC, Separation Benefits Plan, | § | |
| Defendant. | § | |

# Opinion on Summary Judgment

1. *Introduction.*

An executive was asked to leave. The administrator of his benefits plan denied his claim for one year's salary because he had earned "special fees" – an exclusion under the plan. In addition to his salary, he was paid a one-percent commission on the sale of assets worth in excess of $30 million. The plan will prevail.

2. *Background.*

William Langley was terminated from The Woodlands Operating Company LP. Operating denied his request for a severance benefit under its separation plan. He says that he is owed one year's salary – $255,000.

In 2006, Operating owned The Club at Carlton Woods and The Woodlands Country Club. It sold the Woodlands Club in 2007. In 2011, Howard Hughes Management Co., LLC, acquired Operating. As a wholly owned subsidiary of Howard Hughes, Operating still runs Carlton Woods.

In 2012, Langley managed Carlton Woods. He earned a salary of $255,000 and a performance bonus of $76,500. Since 2006, if his employer sold either country club, he has been eligible to earn one percent of the sales price. When it sold the Woodlands Club for $34 million in 2007, he earned $340,000.

3. *Plan.*

"Employees" of Howard Hughes and Operating who undergo a "separation event" are eligible for a "separation benefit." The only controverted term of the policy is whether Langley was an employee. A worker is not an employee if he is paid "special fees" or employed under a "special contract or arrangement."

4. *Special.*

The plan administrator denied Langley's claim because he was eligible to be paid special fees and employed under a special arrangement. Since 2006, he had been eligible for the Club Sale Incentive Award.

Under that agreement, in 2007, he earned an extra $340,000 when Operating sold the Woodlands Club. If Operating – as an agent for Howard Hughes – had sold Carlton Woods before Langley was terminated, he would have earned another commission.

The plan administrator correctly construed the terms "special fee" and "special arrangement" to include this contract for extraordinary payments. Unlike an ordinary bonus, it paid him for a transaction that would have almost certainly resulted in his being fired. If this had happened, Langley's interpretation of the plan would have resulted in his recovering twice – through his commission and then through the plan.

Langley says that his agreement with Operating ceased when Howard Hughes acquired it. Neither the 2006 memorandum that made him eligible for the commission nor the 2011 purchase contract between Howard Hughes and Operating says that this incentive plan had ended because of the ownership change.

From 2006 until he was terminated, Langley was eligible to be paid an extraordinary fee under a specific, separate arrangement. The plan administrator correctly denied his claim.

5. *Summary.*

The summary of the plan excludes contract laborers and independent contractors as well as "any other employee group or classification not eligible." It also says that the plan will control in the event of a conflict between it and the summary.

Langley complains that the summary and e-mails from human resources did not precisely tell him that workers who earn special fees are excluded. Because it omitted this singular term, he says that it is misleading and, therefore, unenforceable.

The nature of a summary is that it cannot contain every term. It plainly and succinctly

explains the essence of the plan, not minute details.[1] Given how few workers earned special fees at Howard Hughes, it is unsurprising that this term was not in the summary. While his arrangement was not in the summary, he had a copy of the memorandum under which he had recovered one-third of a million dollars, suggesting in operation that he was "special."

Langley also says that he was not given a copy of the plan. His employer did, however, make a copy available to him. All he had to do was visit human resources. The law does not require employers to coddle executives. He had no interest in the plan until he was asked to leave; he did not ask for it even then. This injury is a fiction.

6.  *Conflict.*

The plan administrator, Dara Engle, works for the company that funds the plan. Courts have said that this may conceivably be a conflict of interest that could cause an administrator to abuse her discretion in denying benefits.[2]

Positing this fact as an injury in itself is wrong. Performance under every contract is susceptible to cheating in performance. Deciding that a claim is not covered by the plan is not a failure much less cheating. If Engle had decided wrong, it would be a mistake, not a breach of fiduciary duty. In that case, Langley would get his benefit.

Engle was not conflicted. The plan hired independent counsel, Brennan Reilly, to advise her. The sponsor's thoroughness in retaining counsel and Reilly's advice shows that the plan did not coerce its administrator into an arbitrary denial of his claim.[3]

Critically, Engle correctly decided that he was not an employee under the plan. Assuming she was conflicted, this does not erode the objective reality that Langley was paid with special fees – one percent of $34 million dollars plus the opportunity for more.

7.  *Fiduciary Duties.*

Langley also pleads that the plan administrator breached her fiduciary duties to him when she gave him a misleading summary of the plan. The plan produced the summary plan. It fairly captured the essence of the plan in plain brevity.

---

[1] CIGNA Corp. v. Amara, 131 S. Ct. 1866, 1877–78 (2011).

[2] Crowell v. Shell Oil Co., 541 F.3d 295, 312 (5th Cir. 2008).

[3] Holland v. Int'l Paper Co. Ret. Plan, 576 F.3d 240, 248–49 (5th Cir. 2009).

8.  *Conclusion.*

William Langley will take nothing from the Howard Hughes Management Co., LLC, Separation Benefits Plan. Far from arbitrary, the plan administrator's decision was compelling. Langley was eligible and received special compensation – the Club Sale Incentive Program.

The plan is invited to move for attorney's fees by August 25, 2014.

Signed on August  10 , 2014, at Houston, Texas.

Lynn N. Hughes
United States District Judge