UNITED STATES DISTRICT COURT      SOUTHERN DISTRICT OF TEXAS

United States District Court
Southern District of Texas
**ENTERED**
October 24, 2016
David J. Bradley, Clerk

| | | |
|---|---|---|
| William Langley, | § § § | |
|     Plaintiff, | § § | |
| versus | § § | Civil Action H-13-3595 |
| Howard Hughes Management Co., LLC, Separation Benefits Plan, | § § § § | |
|     Defendant. | § | |

## Opinion on Attorneys' Fees

1.    *Introduction*

An executive was asked to leave. He filed suit against his benefits plan for denying his separation benefits. He took nothing from his benefits plan. The plan moved for attorneys' fees. The plan will prevail.

2.    *Fees.*

The benefits plan, Howard Hughes Management Co., LLC, Separation Benefits Plan, moved for attorneys' fees of $143,814. Under the Employee Retirement Income Security Act, a court may award attorneys' fees.[1] No factor is determinative, but a court considers whether to award fees by evaluating five factors: (1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing party would deter others acting under similar circumstances; (4) whether the party seeking attorneys' fees sought to benefit all participants in an ERISA plan or to resolve a significant legal question under ERISA; and (5) the relative merits of the parties' positions.[2]

---

[1] 29 U.S.C. § 1132 (g)(1).

[2] *See Iron Workers Local #272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980).

William Langley had notice that he was not eligible for regular separation benefits. The separation benefits plan excludes those who earn "special fees." Langley earned special fees. His employment agreement made him eligible to earn one percent of the sales price if the company sold either of its two country clubs. In 2007, the company sold one for $34 million; Langley earned $340,000. When the plan denied him regular separation benefits, it explained that he was not eligible. Despite the plan documents and his being paid $340,000 under a special fee plan, Langley wanted more money from his employer and pursued this suit against the plan.

Langley can likely afford the plan's attorneys' fees. He managed a country club, earning an annual salary of over $200,000 since at least 2006 plus a yearly performance bonus. In 2012, he made $255,000 plus a bonus of $76,500. The plan is asking for $143,814, approximately 56% of his 2012 salary.

Awarding attorneys' fees here could deter others who, like Langley, knew that they did not qualify for certain benefits but pursued lawsuits anyway.

Awarding attorneys' fees would benefit all participants of the plan, because the money that would have otherwise been spent on attorneys' fees can now be used to pay future separation benefits. This case did not address a significant question of law.

This case was resolved entirely in favor of the plan. Though Langley claimed not only that he was entitled to separation benefits but also that the plan administrator was conflicted, that the plan administrator breached her fiduciary duties, and that only the summary of the plan, not the full plan, was available to him, he took nothing. All the factors but one support awarding the plan attorneys' fees.

3.   *Reasonableness of Fees.*

The starting point for determining whether attorneys' fees are reasonable is multiplying the number of hours spent working on the case by the rate charged. Next, a court looks at twelve – non-exclusive and overlapping – factors to adjust that amount if necessary. These factors are: (1) time and labor required; (2) novelty and difficulty of the questions; (3) skill required to perform the legal

work properly; (4) preclusion of other employment by accepting this case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases.[3]

The plan's Andrews Kurth Kenyon LLP attorneys spent 262.8 hours on this case. These hours were multiplied by hourly rates of $555 to $750 for partners, $290 to $540 for associates, and $275 to $290 for paralegals.

Fielding Langley's many claims took a significant amount of time. Though no novel interpretations of ERISA law were argued, Langley put forth many quarrelsome claims to which the plan had to respond effectively. This took skill and perseverance. Spending time on this case took time away from other cases.

The fee charged by Andrews Kurth's lawyers is consistent with that charged by similar attorneys. These attorneys charged a fixed, hourly rate that the plan accepted. In less than three months from the filing of the complaint, both parties had moved for summary judgment, and the case was resolved in less than a year. The plan won on every count, and Langley took nothing. The attorneys involved were well-qualified and included experienced partners. This case was not undesirable. Lawyers from Andrews Kurth have represented the plan and related companies beyond this case. These fees are consistent with those in similar cases.

Langley asserts that reasonable attorneys' fees would be an amount similar to the $18,970 he requested when he moved for summary judgment. Of course, Langley and his attorneys had a contingent fee agreement. Assuming they are worth $18,970, Andrews Kurth's lawyers are not them. They had only to throw out several claims. Andrews Kurth's lawyers had to effectively respond to each one and prove that it lacked merit.

---

[3] *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974).

The plan's requested attorneys' fees are reasonable. Langley will pay the plan's attorneys' fees.

4. *Conclusion.*

The plan will take $143,814 in attorneys' fees from Langley.

Signed on October 24, 2016, at Houston, Texas.

Lynn N. Hughes
United States District Judge